IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS JEROME NEAL,               )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        1:17-cv-569
                                  )
GREEN FORD, LLC,                  )
                                  )
                Defendant.        )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff Thomas Jerome Neal, proceeding pro se, alleges that his former employer, Defendant Green Ford, LLC, discriminated against him in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e _et seq._ ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 _et seq._ ("ADEA"). Before the court is Green Ford's motion for summary judgment. (Doc. 27.) Neal has filed a response (Doc. 30), and the motion is ready for decision. For the reasons set forth below, the motion will be granted, and the action will be dismissed.

## I.  BACKGROUND

The facts, viewed in the light most favorable to Neal as the non-moving party, are as follows:

Neal is a 45-year-old African American male hired by Green Ford in August 2014 to work in its auto detailing department. (Doc. 2 at 4, 7; Doc. 28-1 at 25.) He worked on commission, but

the company always ensured that he made at least minimum wage. (Doc 28-1 at 25–26.)

About one year later, Neal moved to the company's janitorial department, after a successful interview with the company's then general manager, Tony Blackmon, an African American. (Doc. 2 at 7; Doc. 28-1 at 27–29; Doc. 30 at 2.)[1] Neal's starting pay was $9 an hour, and he received two $1 raises, one from Blackmon, and one from the current general manager, Jeremy Collins, who took over in May 2016 and is apparently Caucasian. (Doc. 2 at 7–8; Doc. 28-1 at 29–30.) Neal was supervised by Curtis Smith, who is also African American and the only other employee in the janitorial department. (Doc. 28-1 at 30, 42.)

Before Collins started as general manager, Neal and other employees looked up Collins's Facebook page, which contained posts that Neal considered racist and derogatory.[2] (Doc. 2 at 7, 10–

---

[1] Though the verified complaint alleges that Neal was hired as a janitor on January 15, 2015 (Doc. 2 at 7), he testified in his deposition that he moved to the janitorial department roughly a year after he started work in the detailing department. (Doc. 28-1 at 27–29.)

[2] Attached to Neal's verified complaint are copies of posts he says are from Collins's Facebook page. They include a quote from comedian Jay Leno that "Over a million people in California lost their health coverage. Some are so angry . . .they're going back to Mexico"; statements critical of former President Obama; a picture of the band Village People; a tombstone engraved with "AMERICA 1776-2013 Cause of death: Barack H. Obama"; a picture of a flag with the statement: "In every country where Muslims are in the minority, they are obsessed with minority rights. In every country with a Muslim majority, there are NO minority rights"; a quote attributed to Vladimir Putin stating that Russia does not need minorities; a quote attributed to George Washington stating "The time is now near at hand, which must probably determine

18.) Once Collins started, he soon restructured the janitorial department hours and work schedule. (Id. at 7.) He demoted Smith from supervisor to janitor and assigned Alex Wagoner, a Caucasian male, to check to ensure the janitorial work was completed. (Id.; Doc. 28 at 3.)[3] Neal believed that Smith was not doing his work and that Wagoner was not checking the work on days that Smith was working, so Neal took pictures of the uncleaned areas and complained about Smith up his "chain of command" from Wagoner, to Human Resources Director Lisa Myers, and then to Collins, showing them the photos he had taken. (Doc. 2 at 7; Doc. 28-1 at 35, 90.)

Shortly after becoming general manager, Collins decided to eliminate the janitorial department and outsource the work. (Doc. 30 at 3; Doc. 28-1 at 61; Doc. 28 at 3; Doc. 2 at 8.)[4] He stated

---

whether Americans are to be freemen or slaves"; a post shared from an account titled "Obama is Officially The Worst President in American History!" with images stating "If you have an iPhone 5 and receive food stamps . . . You Probably Vote Democrat!"; and "I don't always talk to Obama voters. But when I do, I ask for large fries." (Doc. 2 at 10-18.)

[3] In his verified complaint, Neal alleges that Collins assigned Wagoner to the supervisor position where he "was assigned to manage the Department, and at the end of each work day, check all the areas to make sure they are cleaned." (Doc. 2 at 7.) Green Ford maintains, however, that Collins did not appoint a supervisor to replace Smith but instead assigned Wagoner to "make check off lists where the janitorial staff was supposed to sign off that it had done work," and to go "behind the staff to see that it was done." (Doc. 28 at 3.) In his deposition, Collins testified that he did not make Wagoner manager of the janitorial department but told him "to make sure the work was being done and check the checklist." (Doc. 28-2 at 34.)

[4] In his verified complaint, Neal alleges that the janitorial department was eliminated on or about October 2016 (Doc. 2 at 8), while in his

3

he did so because of complaints regarding the quality of the work and as a cost saving measure. (Doc. 2 at 7; Doc. 28-2 at 32-33.) Collins hired Jani-King, an independent agency, to perform the janitorial work.[5] (Doc. 2 at 8; Doc. 28 at 9.) As a result, Neal's janitorial position was terminated, and he was offered, and accepted, a position in Green Ford's detailing department, where he was paid less. (Doc. 2 at 8.) Smith took a position moving cars around Green Ford's lot. (Id; Doc. 28-1 at 67.)

Neal told Myers he intended to file a complaint with the Equal Employment Opportunity Commission ("EEOC").[6] (Doc. 2 at 8.) He

[5] response brief, he states that the outsourcing occurred shortly after Wagoner was moved to the janitorial department. (Doc. 30 at 3.) But in his deposition, Neal testified that he could not recall exactly when the outsourcing occurred, describing it as occurring "shortly after" his conversation with Collins about his raise, stating that it might have been a couple weeks or a month thereafter. (Doc. 28-1 at 61.) As there is no indication when Neal talked to Collins about his raise, it is unclear from Neal's deposition when the outsourcing occurred. Green Ford's brief in support of its motion for summary judgment states that the outsourcing occurred shortly after Neal's complaints regarding the cleanliness of the facility. (Doc. 28 at 3.)

[5] While the verified complaint states that Wagoner "was put in charge of hiring an outside group to take over the Janitorial duties," it also states that Collins outsourced the janitorial position. (Doc. 2 at 8.) Throughout his deposition, Neal states that Collins made the decision to outsource the janitorial department. (Doc. 28-1 at 33, 58.) In its response, Green Ford states that Collins elected to outsource the janitorial department, and in his deposition, Collins explains the reasons he considered for doing so. (Doc. 28-2 at 32-36.)

[6] In his verified complaint, Neal alleges that he made this statement after the janitorial department was terminated and he was transferred to the detail department (Doc. 2 at 8), while in his response to Green Ford's motion for summary judgment he states both that Green Ford "retaliated against him for complaining to the Human Resources Director that the work environment was unsafe" (Doc. 30 at 3), and that after he threatened to go to the EEOC, Green Ford retaliated against him by

asked Myers why he could not be considered for "other predominantly Caucasian departments," which he contends includes the company's parts and service departments. (Id.) Neal testified at his deposition that Myers responded by telling him that he did not have any experience in the other department areas. (Doc. 28-1 at 64–65.)

Neal voluntarily resigned three weeks after transferring to the detail department. (Id.; Doc. 28-1 at 73.) On October 3, 2016, he filed a charge with the EEOC, alleging race and age discrimination, and the EEOC issued a right to sue letter. (Doc. 2 at 5, 9.) In the present lawsuit, Neal claims he was discriminated against based on race and age on three grounds: (1) the outsourcing of his job; (2) his placement back to the detailing department; and (3) retaliation. He seeks $75,000 for lost wages and emotional distress.[7] (Id. at 5.)

## II. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that

---

transferring him to the detail department (Doc. 30 at 6.) In his deposition, Neal explained that he told Myers he was going to file a complaint with the EEOC in response to Myers informing him that the janitorial department was outsourced and he was transferred to the detail department. (Doc. 28-1 at 62.) The verified complaint and sworn deposition testimony have evidentiary value; Neal's response brief does not.

[7] Neal claims 8 months of lost wages, which he says amounts to over $14,400 in damages, as well as $45,000 for pain and suffering. (Doc. 28-1 at 208.)

there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a). "A genuine issue of material fact exists 'if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party.'" Basnight v. Diamond Developers, Inc., 146 F.
Supp. 2d 754, 760 (M.D.N.C. 2001) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)). In determining a motion
for summary judgment, the court views the "evidence in the light
most favorable to the non-moving party, according that party the
benefit of all reasonable inferences." Id. Summary judgment
should be denied "unless the entire record shows a right to
judgment with such clarity as to leave no room for controversy and
establishes affirmatively that the adverse party cannot prevail
under any circumstances." Guessford v. Pa. Nat. Mut. Cas. Ins.
Co., 983 F. Supp. 2d 652, 659 (M.D.N.C. 2013) (quoting Campbell v.
Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994)).

Neal proceeds pro se. "When reviewing a pro se complaint,
federal courts should examine carefully the plaintiff's factual
allegations, no matter how inartfully pleaded, to determine
whether they could provide a basis for relief." Armstrong v. Rolm
A. Siemans Co., 129 F.3d 1258, *1 (4th Cir. 1997) (citations
omitted) (unpublished table opinion). However, the liberal
construction of a pro se plaintiff's pleading does not require the
court to ignore clear defects in pleading, Bustos v. Chamberlain,

No. 3:09-1760-HMH-JRM, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to "conjure up questions never squarely presented in the complaint," Brice v. Jenkins, 489 F.Supp.2d 538, 541 (E.D. Va. 2007) (internal quotation marks and citation omitted). Nor does it require that the court become an advocate for the unrepresented party. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

A plaintiff may prove discrimination under Title VII or the ADEA "either through direct and indirect evidence of [discriminatory] animus, or through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Foster v. Univ. of Md. - E. Shore, 787 F.3d 243, 249 (4th Cir. 2015), abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013)). Each basis for relief will be addressed in turn.

**B. Race Discrimination**

A plaintiff may survive a motion for summary judgment by producing "evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact," and this evidence must be "of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Candillo v. N.C. Dept. of Corr., 199 F. Supp. 2d 342, 349-50 (M.D.N.C. 2002) (first quoting Brinkley v.

<u>Harbour Recreation Club</u>, 180 F.3d 598, 607 (4th Cir. 1999), then quoting <u>Fuller v. Phipps</u>, 67 F.3d 1137, 1142 (4th Cir. 1995)).

Neal cites Collins' posts on his personal Facebook page as evidence of racial discrimination. (Doc. 2 at 10–18.) However, regardless of any racial animus that may be reflected by them, there is no showing that the posts had any bearing on any decision affecting Neal's employment. The posts are dated 2013, predating the decision to outsource the janitorial work and reassign Neal to the detail department by two or more years, and there is no showing of any link between the posts and Collins' decisions in this regard. There is also no evidence that Collins ever talked about the posts or had similar posts at Green Ford. Rather, Neal discovered them independently when he looked up Collins' personal Facebook page before Collins started working at Green Ford "just to get a sense about who he is." (Doc. 28-1 at 85.) Had Neal not done so, he would never have known about them. Neal further acknowledged that Collins never sent any post to him or asked him to look at them. (<u>Id.</u>) Neal also never observed Collins make any racially inappropriate comment at work at Green Ford. (<u>Id.</u> at 87.) Therefore, the Facebook posts are insufficient direct or indirect evidence of racial discrimination sufficient to create a genuine issue of material fact. <u>See</u> <u>Almoghrabi v. Gojet Airlines, LLC</u>, No. 4:14-CV-00507, 2016 WL 393580, *7 (E.D. Mo. Feb. 2, 2018) (finding that social media comments were stray political remarks

8

that did not constitute direct evidence of discrimination because there was no link shown between the comments and the decision to terminate the plaintiff).

In his verified complaint, Neal alleges that when Collins gave him a raise, Collins stated that "he has had contacts with individuals of the Hispanic race whom [sic] would do the [janitorial] job at a cheaper rate, just as if [sic] Greenford has working at their Auction." (Doc. 2 at 8.) Neal alleges that Collins "reassured me that I would not have anything to worry about because my job was secure." (Id.) Nothing further is offered in the verified complaint or in either of the depositions filed in the record, and the comment is not mentioned in either of the parties' briefs. While insensitive, these comments do not constitute direct or indirect evidence of racial animus, but rather reflect concern about cost.[8]

---

[8] A Progressive Discipline Form issued to Neal on November 18, 2015, introduced by Green Ford during Neal's deposition as evidence that Neal was not performing satisfactorily, has a section entitled "expected change in behavior," which contains written comments from Blackmon's conversation with Neal. (Doc. 28-1 at 167.) It states: "Per Tony, Not to play the race card and do not speak to a manager like that in the future." (Id.) Neither Neal nor Green Ford references this "race card" statement anywhere in the record. While this statement does mention race, it is attributed to Blackmon, who no longer worked at Green Ford at the time the janitorial department was eliminated and Neal was transferred to the detail department. To impose liability on an employer for an adverse employment action, the person allegedly acting pursuant to a discriminatory animus must be the one "'principally responsible' for, or the 'actual decisionmaker' behind, the action." Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 288–89 (4th Cir. 2004) (citing Reeves, 530 U.S. at 151–52). Therefore, even if this comment was evidence of racial animus, which is questionable, it was not made by the

A plaintiff may also seek to use the burden shifting framework of McDonnel Douglas. To establish a prima facie claim of race discrimination under McDonnell Douglas, a plaintiff must establish: (1) he is a member of a protected class; (2) satisfactory job performance; (3) he suffered an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

Neal clearly satisfies the first and third elements of the McDonnell Douglas test. As an African American, he is a member of a protected class. He has also suffered an adverse employment action because he has had "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011), when his janitorial position was terminated and he was moved to the detail department, which paid less than the janitorial department. (Doc. 30 at 5–6 (noting that Neal's transfer to the detail department constitutes a reassignment with significantly different responsibilities and "a forty percent cut in pay").)

---

decisionmaker responsible for the alleged adverse employment action taken against Neal, general manager Collins, and there is no evidence that any potential racial animus Blackmon (who was African American) could have held would have had any bearing on Collins.

Green Ford contends that Neal fails to meet the second element
-- that Neal was performing his job at a level that met his
employer's legitimate expectations at the time of termination.  At
this stage the question depends on the "perception of the decision
maker . . . , not the self-assessment of the plaintiff." Hawkins
v. PepsiCo., Inc., 203 F.3d 274, 280 (4th Cir. 2000); see also
Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515-16 (4th Cir. 2006)
("[B]ecause a plaintiff must show by a preponderance of the
evidence that he met the employer's legitimate job expectations to
prove his prima facie case," at the prima facie stage the court
must consider the employer's "evidence that the employee was not
meeting those expectations.").  Collins testified in his
deposition that one of the reasons the janitorial department was
terminated was because "the job was not being done to the
satisfaction of some of [his] other departments" and he had
received "repeated complaints" about the performance of the
janitorial department.  (Doc. 28-2 at 32.)  Green Ford also relies
on a Progressive Discipline Form issued to Neal while he was
working as a janitor for arguing with Marvin, the body shop
manager, about parking at work.  (Doc. 28-1 at 55-56, 167.)  On
the other hand, Neal had just received the second of two raises a
few weeks before the outsourcing and testified that Collins told
him he gave him the second raise because he was doing an

"exceptional job" and encouraged him to "keep doing the good job that you've been doing." (Id. at 33, 56-58.)

Even assuming Neal was performing satisfactorily when he was transferred, however, he fails to provide evidence that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. He argues that terminating the janitorial department, which was staffed by two African American employees, while keeping Wagoner, a Caucasian employee, in a supervisory role is evidence of racial discrimination. (Doc. 30 at 6-7.) But Wagoner was not doing any of the janitorial work; he was simply checking to see that it got done. And Collins had just given Neal a raise a few weeks earlier. (Doc. 28-1 at 37.)

Green Ford also argues, correctly, that there is no inference of discrimination because Neal cannot show that his position was filled by someone not in the protected class. (Doc. 28 at 8-9.) The evidence is that Neal's position was terminated and outsourced to an independent agency, Jani-King, which is composed of multiple individuals, and there is no evidence Green Ford knew, or has any control over, the race of Jani-King's employees. (Doc. 28-1 at 68-69; Doc. 28-2 at 32-36); see Atkinson v. Food Lion, LLC, 433 F. Supp. 2d 628, 634 (M.D.N.C. 2005) (finding that where an entire department was eliminated to reduce costs, the plaintiff's position was not filled by a person outside of her protected class).

Moreover, there is no evidence tending to show that Green Ford failed to treat race neutrally when deciding to eliminate Neal's position. Collins testified that Green Ford cut costs in other ways besides eliminating the janitorial department, including cutting advertising expenses and reducing office staff. (Doc. 28-2 at 31.) Furthermore, the only other African American employee in the janitorial department, Smith, was moved to another department where his pay stayed the same. (Doc. 28-1 at 67.) Therefore, Neal fails to establish a prima facie case of race discrimination.

Even if Neal could overcome those hurdles, he cannot overcome the remainder of the burden-shifting approach. Assuming he could establish a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action," and this burden on the employer is one of production, not persuasion. Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Green Ford has produced evidence that the janitorial department was eliminated and outsourced as a cost-cutting measure. (Doc. 28-2 at 32, 35-36.) Thus, it has articulated a legitimate, nondiscriminatory reason for eliminating Neal's janitorial position. See Atkinson, 433 F. Supp. 2d at 634–35 (finding that the employer's proffered reason for the plaintiff's termination, that the plaintiff's department was eliminated as part of cost-cutting efforts, was a legitimate

business reason); <u>Bennett v. Charles Cty. Pub. Sch.</u>, No. AW-04-1501, 2006 WL 4738662, at *3 ("By averring that its wastewater plants were reaching the end of their useful life expectancies, and that it made business sense to eliminate some plants, place others with modern facilities, and retain an independent contractor to oversee the plants that remained, Defendant has met its burden of stating a legitimate, nondiscriminatory reason for its employment decision.")

Where an employer meets its burden, the plaintiff must "prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." <u>Holland</u>, 487 F.3d at 214 (internal quotation marks omitted). A plaintiff can prove pretext by showing that the employer's explanation is "unworthy of credence" or by offering other forms of circumstantial evidence sufficiently probative of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 804; <u>Anderson v. Westinghouse Savannah River Co.</u>, 406 F.3d 248, 269 (4th Cir. 2005) (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000)).

Neal argues that Green Ford's "reasoning is just a pretext for discrimination and retaliation" because if the company were interested in cutting expenses, it should have cut costs in other departments where salaries are higher. (Doc. 28-1 at 69-70.) But Neal offers no evidence to support his contention other than to

point to higher salaries in other departments that were not reduced. (Doc. 30 at 6; Doc. 28-1 at 69-72.) His conclusory contention fails to create a genuine dispute of material fact. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion."). Green Ford, in contrast, has provided sworn testimony from its general manager, Collins, that the elimination of the janitorial department was part of a cost-cutting measure. (Doc. 28-2 at 32.) Green Ford need not demonstrate that its reasons for eliminating the janitorial department were "wise, fair, or even correct," but simply that its reasons for taking the action were truly the reason for the plaintiff's termination. DeJarnette v. Corning, Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (stating that courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions" (quotation marks omitted)); see also Hawkins, 203 F.3d at 279.

Therefore, even if Neal could establish a prima facie case, he cannot demonstrate that Green Ford's cost-cutting measures were pretextual, and has failed to meet his burden under McDonnell Douglas.

### C. Age Discrimination

Neal alleges that Green Ford engaged in age discrimination by employing Jani-King, which employs workers younger than him. (Doc. 28-1 at 69.) But Jani-King is an independent agency, and the fact

that its employees are younger than Neal is not, without more, evidence of age discrimination. Neal offers no evidence of any statement about his age or any other fact related to it from which an inference of age discrimination could reasonably be drawn.

As with his race discrimination claim, Neal can also proceed under the burden-shifting framework. To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show: (1) he was a member of the protected age group (i.e., over the age of forty); (2) he was discharged or demoted; (3) at the time of discharge or demotion he was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion, he was replaced by someone of comparable qualifications outside the protected class or substantially younger.[9] Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308 (1996)).

Here, too, Neal has established the first two elements of a prima facie case: he is 45 years old and thus falls within the ADEA's protection for "individuals who are at least 40 years of age," 29 U.S.C. § 631, and he was discharged or demoted when his janitorial position was terminated and was moved to the lower-

---

[9] In an ADEA case, the plaintiff need not be replaced by someone outside the protected class (i.e., someone under 40), provided that the replacement is younger than the plaintiff. Burns, 96 F.3d at 731 n.1 (citing O'Connor, 517 U.S. at 312); see also Laprise v. Arrow Intern., 178 F. Supp. 2d 597, 605 n.8 (M.D.N.C. 2001).

paying detail department. For the reasons noted earlier, whether Neal was performing his job duties at a satisfactory level at the time his position was terminated may be subject to dispute. But even assuming he meets this prong, Neal has failed to establish that he was replaced by a substantially younger individual. He claims that Jani-King employed workers who were younger than him, but he is unfamiliar with the arrangements between Green Ford and Jani-King and offers no evidence of their age. (Doc. 28-1 at 69.)

Moreover, as Green Ford argues, Neal's prima facie case fails because his position was eliminated and outsourced to an independent agency rather than being filled by someone outside the protected class or substantially younger. (Doc. 28 at 9.) See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994) (finding no evidence of age discrimination where the plaintiff was terminated because his entire department was eliminated and there was no evidence indicating that workers holding similar jobs to the plaintiff were retained while he was not); Atkinson, 433 F. Supp. 2d at 633–34 (holding that because the entire team for which the plaintiff worked was eliminated as part of a cost reduction, plaintiff's position was not filled by a person outside of her protected class); Kinser v. United Methodist Agency for the Retarded – W. N.C., Inc. No. 3:13-CV-175, 2014 WL 4053566, at *4 (finding there was no evidence that the plaintiff was replaced by a substantially younger person where the employer submitted

evidence that the plaintiff's position was eliminated after his termination and his duties were merely absorbed by the employer). Therefore, Plaintiff has failed to establish a prima facie case of age discrimination.

As with the race discrimination claim, even if Neal could successfully establish a prima facie case of age discrimination, Green Ford has provided a legitimate, nondiscriminatory reason for elimination of the janitorial department: a cost-cutting measure after numerous complaints were received about the janitorial department. (Doc. 28 at 10; Doc. 28-2 at 32.) Neal has produced no evidence that the cost-cutting reason for cutting the janitorial department was pretextual, and he thus fails to meet his burden under the McDonnell Douglas test. Therefore, there is no genuine dispute of material fact regarding Neal's age discrimination claim, and Green Ford's motion for summary judgment will be granted.

## D. Retaliation

Employers are prohibited from "retaliating against an employee for complaining about prior discrimination" or participating in a protected activity. Foster, 787 F.3d at 249; Baqir v. Principi, 434 F.3d 733, 748 & 748 n.16 (4th Cir. 2006) (citing 29 C.F.R. § 1614.101(b)). Title VII retaliation claims require a showing that the action would not have happened but for the plaintiff's protected activity. Univ. of Tex. Sw. Med. Ctr.

18

v. Nassar, 570 U.S. 338 (2013).  A plaintiff may prove retaliation "either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of McDonnell Douglas."  Id.  To establish a retaliation claim using direct and indirect evidence, a plaintiff must present "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 577–78 (4th Cir. 2015)).  Here, Neal has failed to present any direct or indirect evidence of conduct reflecting a discriminatory attitude that would bear directly on his transfer to the detail department.

To state a prima facie claim of retaliation under Title VII and the ADEA, a plaintiff must establish that (1) he engaged in a protected activity; (2) his employer took a materially adverse action against him; and (3) a causal relationship exists between the protected activity and the adverse action.  Coleman, 626 F.3d at 190; Baqir, 434 F.3d at 747; Hinton v. Va. Union Univ., 185 F. Supp. 3d 807, 825–30 (E.D. Va. 2016) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).[10]  In the context of a

_____

[10] Though some cases in the Fourth Circuit state the second element of a retaliation claim as an "adverse employment action," in "the overwhelming majority of cases[,] the distinction between 'adverse employment action' and 'materially adverse action' is unlikely to change the outcome of a case."  Hinton, 185 F. Supp. 3d at 830.  Here, the distinction between the two formulations of the second element does not change the outcome

19

retaliation claim, a "protected activity" is an employee's participation in an ongoing investigation or proceeding under Title VII, or an employee's opposition to discriminatory practices in the workplace. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998); 42 U.S.C.A. § 2000e-3(a). For the second factor, the "'materially adverse action' standard is explicitly less restrictive than the 'adverse employment action' standard for discrimination claims" because while "'adverse employment actions' in the discrimination context must 'affect employment or alter the conditions of the workplace,' a 'materially adverse action' in the retaliation context need not impact conditions in the workplace to be actionable." Hinton, 185 F. Supp. 3d at 826; Cravey v. Hill, No. 1:17-CV-1014, 2018 WL 4471732, *5 (M.D.N.C. Sept. 18, 2018). Upon this showing, the burden shifts to the defendant to produce evidence that its actions were not retaliatory. Foster, 787 F.3d at 250 (4th Cir. 2015). If the defendant does so, then the plaintiff must show by a preponderance of the evidence that the defendant's asserted grounds for taking its action were a pretext for retaliation. Id. When proceeding under the burden shifting framework, therefore, the "but-for" standard is met by showing pretext and that discrimination was the

---

of the case because the termination of Neal's position in the janitorial department and Neal's transfer to the lower-paying detail department constitute an adverse employment action that was material.

"real reason for the challenged conduct." Foster, 787 F.3d at 252 (noting "the McDonnell Douglas framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action"); accord Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216–17 (4th Cir. 2016) (noting that the burden to show pretext merges with plaintiff's burden of persuading the court that plaintiff was a victim of intentional discrimination).

For the reasons discussed previously, the termination of Neal's position in the janitorial department and Neal's transfer to the lower-paying detail department constitute an adverse employment action. Thus, Neal has established that he suffered a materially adverse action.

Green Ford argues that there is no evidence that Neal engaged in a protected activity, because his complaints to human resources had nothing to do with race or age. (Doc. 28 at 12.) Green Ford also contends there is no causal connection between any protected activity and the elimination of the janitorial department and Neal's transfer to the detailing department because there is no evidence that Collins was aware of Neal's complaints to human resources. (Id.) Even if Neal were able to demonstrate a prima facie case of retaliation, Green Ford argues, it has provided a nonretaliatory reason for its conduct, which Neal cannot rebut. (Id. at 12–13.)

Neal argues in his brief that Green Ford "retaliated against him for complaining to the Human Resources Director that the work environment was unsafe" (Doc. 30 at 3 (citing Doc. 28-1 at 34)), and that after he threatened to go to the EEOC, Green Ford retaliated against him by transferring him to the detail department (Doc. 30 at 6.) However, when asked to explain his claim in his deposition, Neal testified that the retaliation was the fact that Myers told Wagoner about his (Neal's) complaints that Wagoner was not properly checking the poor quality of Smith's work (Doc. 28-1 at 65-67), as well as Neal's placement in the detail department after making these complaints. (Id. at 63-67.) Neal also claims he was retaliated against when Myers had Wagoner ask other employees what Neal discussed with them, and when Myers watched him work in the detail department. (Id. at 74-75.)

To prove a causal relationship, a plaintiff must show that he suffered a materially adverse action "because the plaintiff engaged in a protected activity." Holland, 487 F.3d at 218 (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)). The difficulty with Neal's claim is that his verified complaint alleges that he told Myers that he intended to file a complaint with the EEOC after the janitorial department was terminated and he was transferred to the detail department. (Doc. 2 at 8.) Neal's sworn deposition testimony is to the same effect. (Doc. 28-1 at 62.) Thus, even

if any of Neal's comments could be construed as invoking a protected activity, which is doubtful, there can be no causal relationship because the alleged threat came after the adverse employment actions.[11]  Moreover, Neal has offered no evidence that Collins, the general manager who terminated the janitorial department as a cost-cutting measure, was aware that Neal had threatened to go to the EEOC.  Plaintiff's contentions that he was fired because of his complaints are wholly conclusory, and the only evidence that he proffers to support his claim that his transfer was causally related to his complaints is his own opinion. For establishing the required causal connection in a retaliation claim, "[a] plaintiff's own self-serving opinions, absent anything more, are insufficient." Mackey v. Shalala, 360 F.3d 463, 469–70 (4th Cir. 2004).

Therefore, Neal is unable to satisfy the third element of a prima facie case of retaliation, and Green Ford's motion for summary judgment will be granted.

**E.  Hostile Work Environment**

In his verified complaint, Neal alleges that working at Green Ford "was a bad environment, which led [him] to resign [his] position as detailer." (Doc. 2 at 8.)  Liberally construing this

---

[11] Neal also vaguely stated that at some unstated time he complained about going to the EEOC about overtime pay.  (Doc. 28-1 at 58.)  Even assuming this statement was made at a time it could be causal, there is no evidence any decisionmaker learned of it.

claim due to Neal's pro se status, this appears to be a claim for a hostile work environment.  Green Ford moves for summary judgment on Neal's hostile work environment claim on the grounds that Neal failed to demonstrate that he experienced any harassment related to race or age, and that there is no basis for imposing liability on the employer because there is no evidence that Green Ford acted improperly.  (Doc. 28 at 13.)

To establish a hostile work environment claim for age or race-based harassment, an employee must show that (1) he experienced unwelcome harassment; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.  Baqir 434 F.3d at 745-46, 746 n.14 (applying this test to both race and age claims, but noting that the Fourth Circuit has previously assumed, without deciding, that a hostile work environment claim is generally cognizable under the ADEA for plaintiffs age forty or older); Causey, 162 F.3d at 801 n.2 (noting that the Fourth Circuit has not formally recognized a cause of action for hostile work environment under the ADEA but, because the parties did not dispute that such a cause of action exists, assuming, without deciding, that the cause of action exists for

purposes of the claim).[12] A hostile work environment claim requires both an objective and subjective showing; the plaintiff must plead that the environment was one that "a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)).

Neal offers no evidence that he experienced unwelcome harassment based on a protected status at Green Ford, much less that any alleged harassment was severe or pervasive. Accordingly, Neal fails to establish a prima facie case for a hostile work environment, and Green Ford's motion for summary judgment will be granted on that basis.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Green Ford's Motion for Summary Judgment (Doc. 27) is GRANTED and this action is DISMISSED.

                                  /s/    Thomas D. Schroeder
                                  United States District Judge

November 15, 2018

---

[12] Green Ford does not contend that a cause of action for hostile work environment does not exist under the ADEA.

25